Peerless Cement Products Co. v. Commissioner.
Peerless Cement Prods. Co. v. Commissioner
Docket No. 15881.
United States Tax Court
1950 Tax Ct. Memo LEXIS 261; 9 T.C.M. (CCH) 138; T.C.M. (RIA) 50050; February 28, 1950
*261 On the facts, held, petitioner is entitled to deduct the sum of $25,000 in each of the taxable years 1942 and 1943, as the reasonable compensation paid to its president, Elias Fellabaum, for services rendered by him in each of those years. Herman D. Rollins, Esq., Chamber of Commerce Bldg., Charleston, W. Va., for the petitioner. Lester M. Ponder, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves tax deficiencies and penalty for the taxable years 1942 and 1943; as follows: Declared Value
Excess-Profits
Excess-Profits
Year
Income Tax
Tax
Tax
Penalty
1942
$3,088.05
$ 1,485.48
$371.37
1943
$233.23
10,115.43
The sole contested issue is the reasonableness of the compensation paid by petitioner to its president for services rendered during the taxable years involved. The case was submitted on a partial stipulation of facts and oral testimony. The facts stipulated are so found. Other facts are found from the evidence. Findings of Fact Petitioner is a corporation organized under the laws of the State of West Virginia, on March 29, 1935. Its principal *262 office and place of business is at Bownemont, West Virginia. Petitioner filed its federal income and declared value excess-profits tax return for 1942, and its income, declared value excess-profits and excess-profits tax returns for 1943 with the collector of internal revenue for the district of West Virginia, at Parkersburg, West Virginia. Petitioner did not file a federal excess-profits tax return for the year 1942. Petitioner was organized to manufacture and sell concrete masonry units and other building materials. Its original authorized capital stock consisted of 100 shares of the par value of $100 per share. In 1940 its authorized capital stock was increased to $50,000. In the taxable years involved, the issued shares of petitioner's capital stock were held as follows: Elias Fellabaum
218 shares
Edith Fellabaum, his wife
1 share
George H. Knepper
1 share
Elias Fellabaum has been the president and general manager of petitioner since its organization in 1935. Petitioner manufactures practically all types of concrete masonry, such as cinder block, concrete block, brick and tile. In 1935, when petitioner commenced business, it had one small semiautomatic *263 hand machine with a capacity of about 1,000 blocks per day. During the period 1935 to 1940, petitioner added semiautomatic and hand machines to increase its capacity to 5,500 blocks per day in 1942. In 1942 petitioner began to receive orders for its products to be used in national defense installations, and such orders were also received in lesser amounts in 1943. Petitioner shipped its products into other states in 1942 to fill orders in connection with the national defense program, although in prior years it marketed its products only in West Virginia. During 1942 and 1943 petitioner branched out into other concrete masonry in addition to blocks and bricks, in order to satisfy specifications that were made by engineers and architects in connection with war plant construction. Such war plants called for a precast concrete beam which had to carry certain stresses with particular engineering requirements, and petitioner produced certain of these beams. Because of government restrictions on building, petitioner did not have many orders for its products to be used in normal domestic construction in 1942 and 1943, except for repair work. Some of petitioner's competitors in localities *264 other than in the area adjacent to petitioner's plant became particularly versed in the government's regulations with respect to restrictions on construction, and thereby began to acquire a large share of the business related to the national defense program. There was an intense demand for concrete masonry during the war period. Elias Fellabaum has been engaged in the business of manufacturing building blocks for about 44 years. In 1935 he was the only person connected with petitioner who knew anything about the block business. Fellabaum designed and built the plants and supervised the installation of the machinery. His duties embraced about everything except bookkeeping and labor foreman. He devoted all of his time to the petitioner's business. In 1942 the petitioner's salesman entered the war, and thereafter the sales promotion was carried on by Fellabaum. The services rendered by Fellabaum in the taxable years were about the same as in prior years. During the years 1942 and 1943, petitioner's assets were comprised of the following items: January
December
December
1, 1942
31, 1942
31, 1943
Cash
$ 8,011.37
$ 9,148.84
$34,305.01
Notes & Accounts Receivable
167,688.55
37,343.71
30,818.47
Inventories
8,952.32
10,756.66
71,303.56
Depreciable Assets After Reserve for Depreciation
53,353.64
49,525.86
50,808.08
Land
19,088.00
16,720.83
16,720.83
*265 The gross sales, officer's compensation deduction claimed for its president, Elias Fellabaum, net income, earned surplus and federal tax liability reported on petitioner's federal income and excess-profits tax returns for the years indicated are as follows: Compensation
Deduction
Gross
Claimed For
Net
Tax
Year
Sales
Elias Fellabaum
Income
Earned Surplus
Liability
1935
$ 8,226.77
$ 1,800.00
[2,513.73)
$ 0.00
1936
39,294.81
3,120.00
736.94
106.00
1937
71,786.67
7,910.87
3,675.03
607.27
1938
105,688.33
6,926.90
2,598.64
$ 37,089.54
324.83
1939
173,523.17
10,000.00
7,206.90
43,971.61
933.97
1940
246,976.70
12,000.00
19,436.32
70,282.75
4,179.32
1941
296,329.53
25,000.00
39,488.00
105,248.06
16,482.00
1942
139,344.92
25,000.00
5,718.00
94,972.76
1,443.86
1943
181,092.16
25,000.00
22,533.77
115,539.51
6,034.80
During the period March 29, 1935, the date of the organization of petitioner, to and including December 31, 1943, no dividends of any type were declared or paid by petitioner. In determining deficiencies for the respective taxable years involved, the respondent disallowed *266 $13,000 in 1942 and $6,000 in 1943, of the total compensation of $25,000 paid by petitioner to Elias Fellabaum as compensation for personal services rendered to petitioner in each of such years. The reasonable value of the personal services rendered by Elias Fellabaum to petitioner in each of the taxable years 1942 and 1943 is the sum of $25,000. Opinion The single issue presented is the factual one of the reasonableness of the compensation paid by petitioner to its president, Elias Fellabaum, in the taxable years involved. The respondent argues that the disallowance of a part of the claimed deduction for compensation paid for personal services is justified for the following reasons: (1) petitioner is a "one man" corporation; (2) no dividends have ever been paid; (3) no resolution of the directors authorizing the payment has been shown; (4) there was a decrease in the gross sales during the taxable years; and (5) there is no proof of the quality of Fellabaum's services. The first four premises are concededly established by this record. While each is a factor to be weighed, they are not controlling on the question of reasonableness if the record as a whole establishes the fact *267 of reasonableness. The burden is upon petitioner, and our inquiry is whether, in the light of the evidence presented, we are convinced that petitioner has met its burden of showing that the personal services rendered were reasonably worth the amounts paid therefor. If the corporation would have been justified in paying an outsider a similar amount for like services, the facts that the person rendering the services is the sole stockholder and that the corporation paid no dividends have no significance. Where other competent and credible evidence is lacking, however, the presence of such cogent factors might well warrant the inference that the payments, while denominated compensation, were in fact distributions of corporate profits. The record establishes that Fellabaum, whose compensation is here challenged, has been engaged in the manufacture of building blocks for about 44 years. In 1935 he established the petitioner, and has been its president and general manager since its formation. Petitioner has had a steady growth, and its success has been due almost entirely to the experience, ability and industry of Fellabaum. He was the sole executive officer and performed about every character *268 of service except that of the bookkeeper and labor foreman. His compensation over the years was increased as the corporation prospered, but such is the usual practice of industry. Fellabaum's compensation in the taxable years involved was not greater than that paid to him in the prior year. The respondent stated that the salary deduction allowed in the taxable years bears the same ratio to net income before compensation to officers as actually prevailed in 1938, 1939 and 1940, and approximately the same as that for 1941. We think the application of such formula is not necessarily the best criterion for determining the reasonableness of the compensation paid. It appears from the record that petitioner's gross sales for the taxable years were less than in the three prior years. The decrease in sales was explained by the imposition of governmental war restrictions and the increased activities of competitors, who became better versed in governmental restrictions and thereby acquired a large share of the business related to the national defense program. But such situations may increase rather than lessen the responsibilities of an executive. Under such circumstances the decrease in gross *269 sales furnishes little basis for concluding that the compensation paid in such years was unreasonable. Significant here, is the opinion evidence of four disinterested witnesses, who have known Fellabaum over a period of years, were familiar with his experience and ability, and were conversant with the character of masonry materials manufactured by petitioner. All of these witnesses, qualified by their experience in or connection with similar or allied businesses, expressed the opinion that the compensation paid to Fellabaum was reasonable. Their testimony was impressive, although not to the same degree. The respondent offered no evidence to the contrary. There is no reason apparent to us for not accepting such evidence. We think it sufficient, when considered with all the other evidence, to establish the fact of reasonableness. Capitol-Barg Dry Cleaning Co. v. Commissioner, 131 Fed. (2d) 712; Wright-Bernet, Inc. v. Commissioner, 172 Fed. (2d) 343. We conclude, and have so found as a fact, that the amount of $25,000 paid by petitioner to Elias Fellabaum for services rendered by him in the respective taxable years 1942 and 1943 was reasonable, and that petitioner *270 is entitled to deduct such amount under the provisions of section 23 (a) (1) (A) of the Internal Revenue Code. The contention of petitioner is sustained. For the taxable year 1942, the respondent imposed a penalty in excess-profits tax in the amount of $371.37 for failure to file an excess-profits tax return. The petitioner puts in controversy such issue. It is stipulated that petitioner did not file an excess-profits tax return for 1942. Petitioner has offered no evidence upon the question of its failure to file a return. We assume that the deficiency in excess-profits tax determined by the respondent and the consequent penalty result solely from the respondent's disallowance of the full amount of the compensation paid to Fellabaum and claimed as a deduction. If, however, upon recomputation under Rule 50, it develops that petitioner is liable for any deficiency in excess-profits tax, then a penalty of 25 per cent of the amount so determined is hereby allowed and shall be added to such deficiency in excess-profits tax for 1942. Decision will be entered under Rule 50.